CENTRAL TRUST CO. OF NEW YORK *et al.* *v.* WABASH, ST. L. & P. RY. CO., (ST. LOUIS, K. & N. W. RY. CO., Intervener.)

*(Circuit Court, S. D. Iowa, E. D.)*

RAILROAD COMPANIES—RECEIVERS—LIABILITY ON CONTRACTS.
　　The W., St. L. & P. Ry., as assignee of the M., I. & N. Ry., held a half interest in a certain bridge and piece of track, the maintenance and repair of which was provided for in a general contract with the other joint tenant. Receivers of the W., St. L. & P., including its leased lines, among them the M., I. & N., were appointed, and made a special contract for specific repairs, which were made by the joint tenant in accordance therewith. Thereafter a special receiver for the M., I. & N. was appointed. *Held,* that the receivers of the W., St. L. & P. were liable as such for the repairs, though as against the M., I. & N. they might have had a good claim therefor.

In Equity. Petition of intervention by the St. Louis, Keokuk & Northwestern Railway Company, to assert a claim against Solon Humphrey and Thomas E. Tutt, as receivers of the Wabash, St. Louis & Pacific Railway Company. Order for payment of claims.

*H. H. Trimble* and *Palmer Trimble,* for intervener.
*James C. Davis* and *Frank Hagerman,* for receivers.

WOOLSON, District Judge. The material facts involved in the hearing of this intervention are not in dispute. In April, 1882, the St. Louis, Keokuk & Northwestern Railway Company, the intervener herein, (and who is hereinafter spoken of as the St. Louis Company,) owned a line of track extending southward from the city of Keokuk, Iowa. The Wabash, St. Louis & Pacific Railway Company, (hereinafter spoken of as the Wabash Company,) was at that date operating its railway south from Keokuk, and was the assignee and lessee of the Missouri, Iowa & Nebraska Railway Company, (hereinafter spoken of as the Missouri Company.) Said Wabash Company (as such assignee and lessee of said Missouri Company) and said St. Louis Company were the joint owners of a bridge over the Des Moines river; and said line of

track, owned, as above stated, by the said St. Louis Company, led to said bridge at its north, and also at its south, end. In April, 1882, said Wabash Company and said St. Louis Company were both using said line of track—or about seven miles thereof—and said bridge; and at that date entered into an agreement whereby said Wabash Company agreed to pay a certain rental for use of said track, and said two companies, the St. Louis and Wabash, therein agreed upon certain terms for the maintenance and repair, among other matters, of said bridge so jointly owned and used by them. In May, 1884, Solon Humphrey and Thomas E. Tutt having been appointed receivers of said Wabash Company, including its leased lines, an ancillary order to same effect was entered in this court. Among the leased lines operated by the said Wabash Company, and which passed into the control of said receivers, was the line of said Missouri Company. And said receivers continued to use the seven miles of track and bridge which, prior to their said appointment, said Wabash Company, as assignee and lessee of said Missouri Company, had been using jointly with said St. Louis Company. In December, 1884, it became necessary to repair said bridge. An agreement in writing was entered into between said St. Louis Company and said receivers, whereby said St. Louis Company was to make the necessary repairs, (which had been specifically agreed upon,) and one half the cost thereof was to be borne by the St. Louis Company and the other half was to be paid by said receivers. The repairs were begun in December, 1884, and concluded in June, 1885, amounting to $533.59, being $266.79 to each of said contracting parties. On July 2, 1885, and pursuant to due order of court, said receivers, Humphrey and Tutt, turned over to Thomas Thatcher, who was on that day duly appointed receiver of the property of said Missouri Company, all the property of said Missouri Company which said receivers of the Wabash Company then had in their possession, and which included said half interest in said bridge. Thereafter said Thatcher, as receiver of said Missouri Company, operated the road of his company—including said bridge—until his discharge as receiver, which occurred some months thereafter. The St. Louis Company presented to said Receiver Thatcher a bill of one half of said repairs to said bridge. He refused to pay same, claiming that the Missouri Company had never agreed to pay any part of it; and, Receivers Humphrey and Tutt refusing to pay any part of said repairs, claiming that the repairs were a charge upon the property of the Missouri Company, the St. Louis Company, by leave of court, has intervened in this action, and the question now presented is whether, under the facts above recited, the St. Louis Company is entitled to recover from Receivers Humphrey and Tutt one half of said repairs.

The necessity for the repairs is conceded. Before the repairs were commenced, the St. Louis Company and the receivers of the Wabash Company agreed on the specific repairs to be made, and in writing each party agreed to pay one half of the cost thereof. The correctness of the bill is not disputed. The sole question is whether Receivers Humphrey and Tutt are liable therefor. Counsel for the receivers argue the ques-

tion from the standpoint of the personal liability of Messrs. Humphrey and Tutt. But the pleadings and agreed statement of facts do not present such a question. If an order herein must stand against them personally, the decision of the court would be of a different nature. If the court finds for the intervener, such finding, under the pleadings, must be against the parties as receivers, and not personally. The repairs were made and bill for repairs incurred while said receivers were in possession of the line of the Missouri Company, and were operating the Wabash trains over the said seven miles of track and of said bridge. Had the Wabash Company been directly—that is, through its own officials, and not through receivers—so operating its line, and made with the St. Louis Company the contract for repairs, which the receivers made, and by mutual consent of the Wabash and the Missouri Companies the lease—from the Missouri to the Wabash Company—had been terminated on the day the said Missouri line actually passed out of the possession of the Wabash receivers, the Wabash Company would have been liable to the St. Louis Company for the bill herein presented. Of this there can be no doubt. Why, then, should not the bill be valid against the receivers of the Wabash Company? It is argued by counsel for the receivers that the receiver of the Missouri Company, though appointed subsequent to the completion of the repairs, should pay this bill, since (the argument insists) the expenditures were for the benefit of the property of the Missouri Company. This argument might be potential were we considering as between the Wabash Company or its receivers, and the Missouri Company or its receivers, the question of apportioning to the Missouri Company any expenditures or liability incurred by the Wabash Company for the betterment of the Missouri property. Had the Wabash receivers paid the amount of the bill, they might with force have pressed, as against said Missouri Company, the justice of charging such payment against the property of the Missouri Company, and the injustice, as to the Wabash Company, of having the bill paid out of Wabash funds. Such apportionment might have been eminently proper, as between lessor and lessee, in adjusting their relations on termination of the lease. But why should the St. Louis Company be compelled to look to the Missouri Company or its receiver for payment? The original contract for keeping this track in repair the St. Louis made with the Wabash Company. The specific and express contract for repair to the bridge it made with the receivers of the Wabash Company. And these receivers, in writing, and in advance of the repairs, agreed to pay one half of the cost of the repairs. These receivers rightly exercised their authority in so contracting. The repairs were not large in expense, and were necessary to safe operations of the road. Relying on the strength of the agreement with the Wabash Company, the St. Louis Company made the repairs. The Wabash receivers stood by and saw the repairs made, and their liability therefor as receivers rendered complete; and, after this liability had attached to their receivership, they turn over the Missouri line to the receiver appointed therefor, but they retain the receivership of the Wabash Company;

and their liability for the repairs, made under their contract, lawfully entered into by them as receivers of the Wabash Company, became and remained a liability binding upon the trust in their hands, and nothing has been shown relieving this trust from the liability thus incurred.

Let an order be entered, directing the payment to intervener by Solon Humphrey and Thomas E. Tutt, as receivers of the Wabash, St. Louis & Pacific Railway Company, and out of and against any property in their hands as such receivers, of the sum of $266.79, with interest at 6 per cent. from April 27, 1886.